576

Iacoponi *v.* Plisko, Appellant.

Argued October 3, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Stephen D. Marriner,* with him *McCreight, Marriner & McCreight,* for appellants.

*Harry Alan Sherman,* with him *Howard F. Carson,* for appellee.

Opinion by Mr. Justice Musmanno, November 27, 1963:

On September 18, 1955, Dino Iacoponi, while working on the roof of the Crescent Coal Tipple in Washington County, fell to the ground when that part of the roof where he was working collapsed. He sustained grave injuries which have apparently permanently crippled him with a complete paralysis of his lower extremities.

He filed a complaint in trespass against Frank Plisko and Louis Grossi, and Louis Grossi, a/k/a Louis Groce, t/d/b/a The West Brownsville Iron & Metal Company, who were engaged in dismantling the coal tipple in question, charging them with negligence in having removed certain supports from the roof without so informing the plaintiff and in having failed to supply him with a safety belt which would have saved him from the fall.

The plaintiff pointed out in his complaint that some time during the first week of September, 1955, he entered into an oral contract with the defendants whereby he, the plaintiff, was to supervise and accomplish the demolition of the Crescent Coal tipple, that the defendants were to supply him with all materials needed for the demolition and that, in compensation, he, the plaintiff, was to receive one-third of the value of the scrap recovered from the undertaking.

The defendants filed an answer denying the contract referred to, and averred that, on the contrary, the plaintiff had been hired as an employee of the defendants. Further, that after the accident the plaintiff entered into an agreement to receive workmen's compensation for his injuries, and had been receiving such compensation ever since. They accordingly claimed that the plaintiff was estopped from initiating a trespass action against them, and moved for judgment on the pleadings. The court of common pleas sustained

the motion, and, on November 10, 1958, entered judgment for the defendants and against the plaintiff.

On September 25, 1962,[1] the plaintiff, through attorneys, filed a petition to open and vacate this judgment alleging that he had received no notice of its having been filed, and that the judgment was founded upon an erroneous premise since he had never been an employee of the defendants. He then charged the defendants with having obtained the compensation agreement from him through fraud, namely, "The Workmen's Compensation agreement dated October 24, 1955, was obtained from petitioner-plaintiff while petitioner-plaintiff was in the hospital suffering from hemiplegia, shock and other serious internal injuries and upon the misrepresentation that the said agreement was for the purpose of securing payment of the hospital and medical bills for petitioner-plaintiff only. Petitioner-plaintiff had no counsel and no competent advice and was unable to read or understand the import of the compensation agreement executed under said circumstances."

He averred further: "At no time until the discovery of the said order of court in the month of September 1961, was petitioner-plaintiff physically able to leave a wheel chair or to travel from his home in Centerville to Washington, Pennsylvania, for the purpose of obtaining information concerning the status of his case."

He prayed for an order to be allowed to file an answer to the averments of new matter set forth in the defendants' answer to the plaintiff's complaint in trespass. On February 13, 1962, the court entered a rule upon the defendants to show cause why the judgment of November 10, 1958, should not be opened.

The defendants filed an answer to the petition, controverting the plaintiff's assertions that he had never

---

[1] The date stamps of the Prothonotary's Office raise some question as to the exact date of filing.

been an employee of the defendants and repeated that by acceptance of workmen's compensation the plaintiff was estopped from denying that he had been an employee of the defendants.

To this answer, the plaintiff filed a motion to make the rule absolute, averring that Dino Iacoponi, by his attorneys, had attempted to take depositions of the defendants on November 3, 1962, and again on December 15, 1962, but that the defendants had failed to appear at the stipulated place. Thus, the plaintiff claimed, the defendants had prevented the plaintiff from making a reply to the defendants' new matter in the answer.

The defendants, in their answer to the petition, stated that one of the defendants was deceased but offered no specific explanation as to the failure to supply depositions. They again claimed, through their attorney, that the plaintiff was estopped from filing a suit in common pleas court since he had received and was receiving workmen's compensation. On January 14, 1963, the Court entered an order making the rule absolute, unless "the defendants or either of them are produced for deposition on or before the 4th day of February, 1963."

On February 18, 1963, the court entered another order stating that notice of the order of January 14, 1963, had inadvertently not been given to counsel for both parties. Accordingly the order was reinstated with the condition that "if the defendants or either of them are produced for deposition on or before the 11th day of March, 1963, the effect of this order shall be thereby stayed."

To this order, the defendants filed a motion to strike, averring that the order of January 14 (filed February 4) had not been served upon the defendants and that the judgment had been lifted without the defendants having been given an opportunity to comply

with the order. The defendants averred that "judgment may not be lifted without a showing of fraud which has not been proved by clear, concise evidence."

This motion was refused and the defendants have appealed. Their appeal is based wholly on the proposition that since the plaintiff has now been receiving compensation under a workmen's compensation agreement since the accident, he may not prosecute a claim in trespass against the defendants. The appellants further point to the workmen's compensation Act which provides a method for modifying or setting aside an agreement "if it be proved that such agreement was procured by the fraud, coercion, or other improper conduct of a party, or was founded upon a mistake of law or of fact."[2]

The Workmen's Compensation Act, while prescribing this method for modifying or setting aside an agreement, does not preclude its being tested in another tribunal having appropriate jurisdiction over the subject matter. If the agreement here involved was actually obtained, as the plaintiff claims, through fraud, it, of course, has no binding effect on the plaintiff, even though, under the particular and extraordinary circumstances of this case, he has been receiving payments thereunder. If, as asserted in the petition to open the judgment of November 10, 1958, the plaintiff was deceived, lied to, and taken advantage of, as he lay in the hospital in a state of complete shock and paralysis, and thus was unable to comprehend what was being asked of him, his signature on the compensation agreement would have no more effect than if someone had taken a paralytic hand and guided it over the paper in a scrawled signature.

---

[2] 1915, June 2, P. L. 736, §413; 1919, June 26, P. L. 642, §6; 1927, April 13, P. L. 186, §6; 1937, June 4, P. L. 1552, §1; 1939, June 21, P. L. 520, §1; 1951, September 29, P. L. 1576, §1 (77 P.S. §771).

It scarcely seems necessary at this late jurisprudential hour in the day of stare decisis to cite cases to certify that fraud taints with illegality and invalidity anything its evil shadow darkens. Nor can there be any question of the right of a court to set aside any contract which is founded on fraud. This is as fundamental and solidly established as the foundations of the courthouse. "The inherent right of a court to set aside a contract for fraud is fundamental." *Reichert Estate,* 356 Pa. 269, 275.

In their answer to the petition to open and vacate the order of November 10, 1958, the defendants deny that there had been any misrepresentation to the plaintiff that the money coming from the agreement was intended only for payment of hospital and medical bills, as alleged by the plaintiff, but it is significant that they do not deny that the plaintiff was suffering from hemiplegia, shock and serious internal injuries at the time the agreement was signed.

To take away from any person his right to go into court to obtain redress for a grievous harm done to him is a serious and solemn matter, and the courts will scrutinize meticulously all circumstances and surrounding facts to be certain, where a waiver of these fundamental rights are involved, that the waiverer has not been overreached, ensnared or imposed upon.

The state of the record before us does not permit of a definitive decision because no testimony was taken on the rule entered February 11, 1962, and no depositions have been taken. There are averments by the plaintiff that the agreement was fraudulently procured and that he was not an employee of the defendants and contrary averments are made in behalf of the defendants that the agreement was not fraudulently obtained and that the plaintiff was an employee. As already indicated, the defendants have not given a clear or convincing explanation of their refusal to appear for

interrogation on the subject of the employment. If there is a continued refusal in this respect, the court below will have no course left but to affirm the opening of the judgment.

Therefore, the latest order of the court below will be vacated and the record remanded for such action as will resolve the disputed facts, and for such other appropriate action as those resolved facts require.

Order vacated and record remanded for the reasons here expressed.

Mr. Justice BENJAMIN R. JONES dissents.