J-A25038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF EUGENIA M. FINNIE, DECEASED | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DENISE M. FINNIE | | |
| | | No. 652 EDA 2024 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2015-X2023,
2016-X2427

| | | |
|---|---|---|
| IN RE: EUGENIA M. FINNIE, PRINCIPAL | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: DENISE M. FINNIE | | |
| | | No. 653 EDA 2024 |

Appeal from the Order Entered December 7, 2023
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2015-X2023,
2016-X2427

BEFORE: OLSON, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED AUGUST 25, 2025**

Denise M. Finnie ("Finnie") appeals from the order, entered after a new trial ordered by this Court,[1] confirming the amended and restated accounts of Maureen Zuber ("Zuber"), co-executrix of the Estate of Eugenia M. Finnie ("the

_____

[1] *See In re Estate of Finnie*, 293 A.3d 643, 2023 WL 2234376 (Pa. Super. 2023) (mem. decision) ("*Finnie I*").

estate" and "the decedent," respectively), and the decedent's agent under a power of attorney ("POA"). We affirm.

We base this holding on the following factual and procedural history of this appeal, which includes a previous trial, a remand from this Court after trial, and a second trial. Zuber and Finnie are sisters born to the decedent and the decedent's husband, George Finnie. *See* Stipulation of Facts, 9/13/21, at ¶ 1. In 1996, the decedent and her husband moved into an independent living community ("Gloria Dei") and paid a refundable $85,000 entrance fee. *See id*. at ¶¶ 3-4. In 2000, the decedent executed a will, which named Finnie and Zuber as co-executrices and evenly divided the decedent's estate between Zuber and Finnie if the decedent's husband predeceased her. *See id*. at ¶¶ 7-9.

The decedent's husband died in 2007. *See id*. at ¶ 10. Around that time, the decedent had financial accounts at Morgan Stanley and Fox Chase Bank ("Fox Chase"). The decedent used the Fox Chase account to pay her expenses, and she funded the Fox Chase account with scheduled withdrawals from Morgan Stanley and direct deposits of social security benefits.[2] Shortly after her husband's death, the decedent executed a POA naming Zuber as her agent. *See id*. at ¶ 13. In 2010, the decedent added Zuber as a joint owner

_____

[2] The Morgan Stanley accounts consisted principally of stocks, mutual funds, and other investments that earned interest and dividends, or offered other cash distributions. *See* Ex. F-24 (Morgan Stanely statement for December 2014). There was no evidence that the decedent had deposited funds into the Morgan Stanely account for investment during the times relevant to this appeal.

with the right of survivorship on the Fox Chase account (hereinafter, "the joint account"). *See* N.T., 9/14/21, at 85-86, 144-46. Between 2010 and 2014, the decedent did not carry a balance greater than $25,000 in the Fox Chase account. *See* N.T., 9/7/23, at 19. By February 2014, Zuber began exclusively writing and signing checks from the joint account for the decedent. *See* N.T., 9/14/21, at 91.

In March 2014, the decedent moved from Gloria Dei to an assisted care facility ("The Park"). *See id*. at 93. The Park charged an admission fee of approximately $5,850, which Zuber paid from a personal account. By the end of April 2014, the balance in the joint account was approximately $8,000. *See id*. at 160; Ex. Z-15. In August 2014, when the decedent turned ninety-two years old, Zuber received, at her home address, an $85,000 refund check for Gloria Dei's entrance fee ("the refund check"), and Zuber deposited the refund check into the joint account. *See* Stipulation of Facts, 9/13/21, at ¶¶ 33-35. Before the deposit of the refund check, the balance in the joint account was approximately $6,000. *See id*. at ¶ 35. Following the deposit, the balance was approximately $91,000, and Zuber thereafter used funds from the joint account to pay the decedent's monthly rent and fees at The Park. *See id*. at ¶ 36.

In April 2015, the decedent was diagnosed with liver cancer, and she died the following month. *See id*. at ¶ 37; *see also* N.T., 9/14/21, at 186, 199-201. The balance of the joint account passed to Zuber outside of the

decedent's estate.[3]  After the decedent's death, Zuber paid the decedent's expenses, including funeral expenses, from the joint account, leaving a balance of approximately $69,400 in the joint account.

In June 2015, the register of wills admitted decedent's will into probate and issued letters testamentary to Zuber and Finnie.  The attorney who drafted the decedent's will and the POA, Christine Embry Steele, Esq. ("Attorney Steele"), filed a preliminary account of the estate.[4]  Finnie retained a separate attorney, Robert Adshead, Esq. ("Attorney Adshead"), who, in relevant part: (1) objected to the omission of the joint account as an assert of the estate; (2) asserted Zuber breached her fiduciary duties as the decedent's agent under the POA when she deposited the refund check into the joint account; and (3) objected to the estate's account not including Attorney

---

[3] *See* 20 Pa.C.S.A. § 6304(a) (stating that "[a]ny sum remaining on deposit at the death of a party to a joint account belongs to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intent at the time the account is created"). Zuber testified she was not aware the joint account had a right of survivorship, and there is some indication she initially believed the joint account was an estate asset.  *See* N.T, 9/14/21, at 85; N.T., 9/7/23, at 175.

[4] Zuber subsequently withdrew the remaining funds from the joint account and deposited those funds into her personal account in October 2015.  The preliminary account of the estate did not include the joint account.  However, it indicated Zuber sought reimbursements from the decedent's estate for the payment of funeral expenses, which Zuber had paid from the joint account after the decedent's death, as well as the decedent's $5,850 initial admission fee to the Park, which Zuber had paid from her personal account while the decedent was alive.  Zuber's claims against the estate are not at issue in this appeal.

Adshead's fees related to the administration of the estate. The court directed Zuber to file an amended account of the estate, an account of the POA, and then an amended account of the POA. Zuber complied,[5] and Finnie continued to lodge similar objections.

The orphans' court held two days of hearings ("the first trial") on Finnie's objections.[6] Following the first trial, the orphans' court determined Zuber breached her fiduciary duty as POA by failing to keep Zuber's and the decedent's assets separate, and the court imposed a $69,412 surcharge against Zuber. With respect to Finnie's claim for attorneys' fees, the court noted "no evidence was produced related to" Attorney Adshead's legal fees. Op. & Adjudication, 3/30/22, at 17. Nevertheless, the court directed the estate to pay Finnie's attorneys' fees incurred in her capacity as co-executrix. *See id*. After Zuber appealed, the orphans' court asserted in a supplemental Pa.R.A.P. 1925(a) opinion that copies of Attorney Adshead's bills, which Finnie first presented as an exhibit to a post-hearing memorandum, established that Finnie's claim against the estate for $11,289 in attorneys' fees was reasonable. *See* Supp. Op., 6/13/22, at 11 (asserting, *inter alia*, that the court acted in its discretion when taking notice of Attorney Adshead's bills). Zuber appealed, and this Court, in *Finnie I*, vacated the orphans' court's

_____

[5] Attorney Steele filed the preliminary and amended estate accounts. Zuber retained separate counsel, who filed the POA and amended POA accounts, and who continues to represent her.

[6] Finnie obtained new counsel prior to the first trial.

decision and remanded for a new trial. *See Finnie I*, 2023 WL 2234376 (mem. decision at *10 & n.6).

Specifically, *Finnie I* concluded the orphans' court erred when determining Zuber's deposit of the refund check into the joint account constituted a *per se* breach of her duty, as the decedent's agent, to not commingle assets. *See Finnie I*, 2023 WL 2234376 (mem. decision at *7, 9). *Finnie I* explained that ownership of a joint account is proportional to the deposits made by each individual owner while alive, and there was no evidence Zuber contributed her own personal funds to the joint account. *See id*. (mem. decision at *7, 9). The *Finnie I* panel further reasoned:

> [W]e cannot affirm the finding of the orphans' court unless it is supported by facts of record evincing a violation of a duty in existence at the time of the deposit. In particular, the certified record must establish that . . . Zuber's act amounted to a failure to (1) exercise her agency for the benefit of [the d]ecedent, (2) keep her assets separate from those of the [d]ecedent, or (3) exercise reasonable caution and prudence. *See* 20 Pa.C.S.[A] § 5601(e) [(subsequently deleted and amended at 20 Pa.C.S.A. § 5601.3, eff. Jan. 1 2015)].
>
> * * * *
>
> The only alleged basis for finding a breach by . . . Zuber that can serve to validate the order of the orphans' court is that the deposit [of the refund check into the joint account] was inconsistent with . . . Zuber's duty to act for the benefit of [the d]ecedent. This is undiscernible from the certified record as it stands.
>
> * * * *
>
> . . . [E]vidence concerning [the d]ecedent's best interests and whether [the d]ecedent was competent to, and in fact did, instruct . . . Zuber where to place the refund check is pertinent to the breach-of-duty analysis. The orphans' court not only failed to

consider the existing evidence on these issues relevant to its decision, but foreclosed the parties from fully developing the record in this respect. Consequently, we are constrained to remand for a new trial for the orphans' court to entertain the relevant evidence and determine whether . . . Finnie is able to establish that . . . Zuber's August 2014 deposit of the . . . refund check into the [joint account] violated her duty to act for the benefit of [the d]ecedent.

*Id*. (mem. decision at *9-10).[7]

As to Finnie's claim for attorneys' fees, *Finnie I* elected not to address Zuber's claim that the orphans' court abused its discretion by reopening the record to consider copies of Attorney Adshead's bills. Instead, *Finnie I* concluded the issue was moot in light of the order for a new trial. *See id*. (mem. decision at *10 n.6). The panel noted Zuber would have a full and fair opportunity to challenge Finnie's entitlement to attorneys' fees at the new trial. *See id*. (mem. decision at *10 n.6).

Upon remand, the orphans' court held a new trial ("the second trial") at which the parties incorporated the record from the first trial, and the trial court heard additional testimony from Finnie, Zuber, and Attorney Steele. Finnie

---

[7] *Finnie I* also determined that the orphans' court erred in finding persuasive a separate memorandum decision in *In re Matter of Estate of Waite*, 260 A.3d 143, 2021 WL 2942050 (Pa. Super. 2021) (mem. decision capable of citation pursuant to Pa.R.A.P. 126(b)). *See Finnie I*, 2023 WL 2234376 (mem. decision at *7). As *Finnie I* explained, the decision in *Waite* involved additional duties, including an agent's duties to preserve a principal's known estate plans, which were set forth in the current version of the POA Act, *see* 20 Pa.C.S.A. § 5601.3, but which had not taken effect when Zuber deposited the refund check into the joint account in 2014. *See id*. (mem. decision at *7-8) (stating, "Here, . . . Zuber's deposit of the refund check into the . . . [j]oint [a]ccount occurred in August 2014, a time when she had no specific statutory duty to preserve [the d]ecedent's estate plan").

and Zuber filed post-hearing memorandums with proposed findings of fact and conclusions of law. In the order entered following the second trial, the orphans' court concluded Finnie failed to carry her burden of proof that Zuber's deposit of the refund check breached her fiduciary duty as the decedent's agent. *See* Order, 12/6/23, at 2. The court also denied Finnie's request for attorneys' fees because Finnie failed to bolster the record with regard to the legal fees she incurred as co-executrix of the estate. *See id*. Finnie timely appealed, and she and the orphans' court complied with Pa.R.A.P. 1925.

Finnie raises the following issues for our review:

A. Did the orphans' court err as a matter of law when it construed this Court's [*Finnie I*] decision too narrowly and failed to find [Zuber] breached her fiduciary duty by not acting for the "benefit" of the decedent?

B. Did the orphans' court err as a matter of law or abuse its discretion when it failed to affirm its [prior] award to [Finnie] for attorneys' fees incurred by her as coexecutor during the administration of the decedent's estate?

1. Did the lower court err on a matter of law on remand when it found [Finnie] was not entitled to reasonable attorneys' fees even though this issue had been waived by [Zuber] during her prior appeal to this Court?

2. Did the lower court err as a matter of law when it violated the law of the case doctrine by placing the burden of proof upon [Finnie] when, on remand from a prior appeal, this Court directed [Zuber] had the burden to disprove attorneys' fees previously awarded?

Finnie's Br. at 4 (some capitalization omitted).

In her first issue, Finnie challenges the orphans' court's decision that she did not establish Zuber's breach of a fiduciary duty.

Our standard of review is as follows:

> When reviewing a decree entered by the orphans' court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the orphans' court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

> However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Walter*, 191 A.3d 873, 878-79 (Pa. Super. 2018) (internal citations, quotation marks, brackets, and some capitalization omitted).

As this Court stated in *Finnie I*, when Zuber deposited the refund check into the joint account in 2014, the former POA statute provided, in relevant part:

> An agent acting under a power of attorney has a fiduciary relationship with the principal. In the absence of a specific provision to the contrary in the power of attorney, the fiduciary relationship includes the duty to:

>> (1) Exercise the powers for the benefit of the principal.

>> (2) Keep separate the assets of the principal from those of an agent.

>> (3) Exercise reasonable caution and prudence.

>> (4) Keep a full and accurate record of all actions, receipts and disbursements on behalf of the principal.

20 Pa.C.S.A. § 5601(e) (quoted in *Finnie I*, 2023 WL 2234376 (mem. decision at *6)).

A court may surcharge a fiduciary as compensation for losses incurred by the fiduciary's lack of due care. *See In re Estate of Schultheis*, 747 A.2d 918, 927 (Pa. Super. 2000). The party seeking to surcharge an agent bears the initial burden of showing that the agent breached an applicable fiduciary duty by failing to meet the required standard of care. *See Spinelli by Morris v. Fallon*, 322 A.3d 956, 964 (Pa. Super. 2024); *In re Estate of Aiello*, 993 A.2d 283, 289 (Pa. Super. 2010).

Finnie argues that Zuber's actions could not have been for the decedent's benefit because Zuber "(1) went beyond the authority she was granted by the [POA]; (2) [acted] contrary to the duties imposed by statute; or (3) [violated] general duties imposed by law or equity." Finnie's Br. at 22. Finnie claims the orphans' court misapplied *Finnie I* as narrowly holding that Zuber could not breach her fiduciary duty as the decedent's agent so long as the funds from the refund check were made available to the decedent. *See id*. at 16.

Before addressing Finnie's specific arguments, we consider Zuber's claims that Finnie failed to preserve her claims for review and that the law of the case doctrine bars Finnie's arguments. *See* Zuber's Br. at 25, 27, 31, 36-39.

Initially, it is well settled that a party must preserve claims for review by first presenting them in the trial court. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). An appellant cannot advance different legal theories

- 10 -

on appeal than she presented in the trial court. *See Murray v. Am. Lafrance, LLC*, 234 A.3d 782, 786-87 (Pa. Super. 2020) (*en banc*) (noting Rule 302(a) prohibits a party from invoking alternative bases for relief for the first time on appeal); *Andrews v. Cross Atl. Capital Partners, Inc.*, 158 A.3d 123, 130 (Pa. Super. 2017) (finding a claim waived where it advanced a different legal theory than offered at trial or in a post-trial motion).

Here, Finnie filed proposed findings of fact and conclusions of law following the second trial, wherein she argued:

> It was in [the d]ecedent's best interest for the $85,000 refund check to be deposited into one of her Morgan Stanley investment accounts because she received interest and dividends from the Morgan Stanley accounts, the Morgan Stanley accounts were invested at a significantly higher rate of return than the joint checking account, and [the d]ecedent historically kept the majority of her funds in her Morgan Stanley accounts. Additionally, depositing the refund check into the Morgan Stanley accounts would have allowed [the d]ecedent to continue paying her ongoing expenses because at least one of the accounts had check writing capabilities and funds were already set up to be automatically transferred to the joint checking account on a monthly basis.
>
> . . . Zuber, however, deposited the $85,000.00 refund check into [the joint] account that . . . Zuber was the recipient of upon [the d]ecedent's death, that received minimal interest, that was used to pay monthly bills, and that [the d]ecedent historically did not keep more than $25,000. Additionally, if we take her testimony as true, . . . Zuber suggested to [the d]ecedent that the refund check be deposited into the joint checking account.
>
> Moreover, . . . Zuber presented no evidence supporting her testimony that the [d]ecedent directed her to deposit the refund check into the joint checking account. . . . Zuber also presented no evidence that [the d]ecedent was shown, or was even aware of, the refund check prior to . . . Zuber depositing it into the joint

- 11 -

checking account or was made aware of its existence at any time thereafter.

Additionally, by depositing the entire $85,000.00 refund check into the joint checking account, . . . Zuber received the balance of those funds only a few months later at the time of [the d]ecedent's death. This is 50 percent more than she would have received as a one-half beneficiary of the residue of [the e]state had the refund check been deposited into [the d]ecedent's Morgan Stanley account. . . . Zuber was aware that she would receive the joint checking account funds upon [the d]ecedent's death as she herself signed the joint checking account agreement which on its face identified the account as "joint with survivorship".

By depositing the $85,000.00 refund check into the joint checking account, the beneficiaries of the [e]state suffered a loss of those remaining funds. . . . Zuber deposited those funds in a way that only benefited herself. As a result, . . . Finnie, as a beneficiary of the [e]state, suffered a loss and the proper remedy is a surcharge . . ..

Finnie's Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17.

As is apparent, Finnie's arguments following the second trial focused on **Finnie I**'s remand instruction to develop a record concerning whether the deposit of the refund check into the joint account was in the decedent's best interests and whether Zuber violated her duty to act for the benefit of the decedent. **See Finnie I**, 2023 WL 2234376 (mem. decision at *10).

On appeal, Finnie now argues that Zuber exceeded the authority granted to her under the POA because the POA did not grant Zuber general banking or gifting powers. **See** Finnie's Br. at 23-24. However, she did not argue this theory of relief following the second trial, **see** Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17, and we conclude it is waived. **See** Pa.R.A.P. 302(a); **Andrews**, 158 A.3d at 130. Similarly, while Finnie claims Zuber's deposit of the refund check into the joint account constituted a

- 12 -

testamentary gift made in violation of the POA, Finnie did not adequately identify that assertion for the orphans' court to rule on following the second trial. *See* Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17. Accordingly, that claim is waived as well. *See* Pa.R.A.P. 302(a); *Andrews*, 158 A.3d at 130.

Finnie's brief also cites non-Pennsylvania cases to assert that Zuber breached her fiduciary duties by depositing the refund check into the joint account. *See* Finnie's Br. at 27. However, Finnie did not cite those cases to the trial court, nor did she assert Zuber violated general principles in law or equity as a basis for finding a breach of a fiduciary duty. Therefore, this claim is also waived. *See* Pa.R.A.P. 302(a); *Murray*, 234 A.3d at 786-87. To the extent Finnie now asserts that Zuber did not exercise reasonable prudence by failing to understand the implications of the right to survivorship in the joint account, she again did not raise that argument following the second trial, *see* Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17, and we find that claim waived. *See* Pa.R.A.P. 302(a); *Murray*, 234 A.3d at 786-87.

Additionally, as noted by Zuber, *Finnie I* previously considered whether Zuber's deposit of the refund check into the joint account constituted a *per se* breach of Zuber's fiduciary duty. Under the law of the case doctrine, "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court. The applicable legal precept is that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *True R.R. Associates, L.P. v. Ames*

*True Temper, Inc.*, 152 A.3d 324, 337 (Pa. Super. 2016) (internal citations and quotation marks omitted). "The doctrine of law of the case applies only if the parties on the two appeals are the same. Issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be considered on appeal." *Tyro Indus., Inc. v. James A. Wood, Inc.*, 614 A.2d 279, 284 (Pa. Super. 1992) (internal citation and quotation marks omitted).

Here, *Finnie I* specifically rejected the orphans' court's conclusions that the deposit alone was a breach of Zuber's duties to keep funds separate and act on the decedent's behalf. *See Finnie I*, 2023 WL 2234376 (mem. decision at *8-9). Moreover, *Finnie I* noted that, at the time of the deposit in 2014, the more recent statutory duties, under 20 Pa.C.S.A. § 5601.3, to (1) avoid conflicts of interest that could impair the agent's ability to act impartially in the principal's best interest, and (2) preserve the principal's estate plan to the extent known by the agent, had not yet taken effect. *See id*. *Finnie I* thus concluded that the deposit alone could not have established a conflict of interest with respect to the decedent's estate planning under section 5601.3. *See id*. (mem. decision at *6, 8-9).

*Finnie I*'s holding that the fact of the deposit into the joint account alone did not establish a breach of a fiduciary duty is the law of the case governing this appeal. Said another way, the deposit into the joint account was not a *per se* violation of Zuber's fiduciary duty. *See generally Tyro Indus.*, 614 A.2d at 284. Finnie repeatedly asserts in this appeal that Zuber

acted in her own interests and breached a duty of loyalty and good faith to the decedent by depositing the refund check into the joint account, the balance of which passed to her, and to the detriment of the estate, by operation of law. These arguments, however, are thinly veiled attempts to relitigate *Finnie I*'s decision that the deposit was not a *per se* violation of Zuber's fiduciary duties to the decedent. *See Finnie I*, 2023 WL 2234376 (mem. decision at *8-9). Therefore, we will not address those claims. *See True R.R. Associates*, 152 A.3d at 336-37.

What remains of Finnie's arguments in her first issue then are that: (1) Zuber's deposit of the refund check into the joint account "clearly worked to [her] own benefit, and not solely for the benefit of the [d]ecedent[;]" (2) Zuber failed to disclose material information to the decedent; and (3) Zuber made the deposit in her own self-interest knowing she would receive the remaining balance upon the decedent's death. *See* Finnie's Br. at 25-30. Additionally, Finnie cites the orphans' court's *prior* Rule 1925(a) opinion to support her claim that there was no credible evidence that the decedent was aware of or ratified the deposit of the refund check into the joint account. *See id*. at 26, 28.

The orphans' court did not expressly consider these arguments, but concluded that: (1) *Finnie I* foreclosed it from concluding Zuber breached her fiduciary duty to keep assets separate; (2) Finnie did not carry her burden of establishing Zuber's breach of the duty to act for the benefit of the decedent; (3) Finnie did not establish the decedent's lack of capacity; and (4) aside from

the fact that Zuber deposited the refund check into the joint account in which Zuber had a survivorship interest, there was "no evidence . . . introduced that . . . Zuber acted in any way other than for the benefit of [the decedent]." *See* Orphans' Ct. Op., 3/13/24, at 6-8. The orphans' court noted that it believed that it was constrained by *Finnie I* to assess Zuber's conduct "with reference to the duty to use the funds for the benefit of [the decedent]." *See id*. at 9.

Although we do not necessarily agree with the orphans' court's reading of *Finnie I* as requiring it to look only at the uses of the funds, our review of the record establishes there was support for the court's ultimate conclusion that Finnie did not carry her burden of establishing Zuber breached her fiduciary duty to act for the benefit of the decedent. Finnie insists that the orphans' court found that there was no credible evidence that "this deposit was ratified or even disclosed to the [d]ecedent." Finnie's Br. at 26, 28. However, Finnie not only relies on the orphans' court's prior supplemental Rule 1925(a) opinion, filed after the first trial, but also misstates the orphans' court's finding. Following the first trial, the orphans' court rejected Zuber's testimony that the decedent expressly instructed her to deposit the refund check into the joint account. *See* Supp. Op., 6/13/22, at 4. Following the second trial, the orphans' court maintained that, due to the parties' hearsay objections, there was no competent evidence regarding any instructions the decedent may have provided Zuber about the refund check. *See* Orphans' Ct. Op., 3/13/24, at 8-9. Contrary to Finnie's assertion, the orphans' court

did not find the decedent never ratified or was otherwise unaware of Zuber's deposit of the refund check into the joint account. *See id*.[8]

Moreover, aside from her legal arguments that the deposit itself constituted a *per se* violation of Zuber's fiduciary duties, which, as discussed above, were addressed in *Finnie I*, Finnie's evidence that Zuber's deposit was not in the decedent's best interest was lacking. Finnie asserted at the second trial that Zuber could have deposited the refund check into the Morgan Stanley account so that the balance would have passed into the estate. *See* N.T., 9/7/23, at 92-94; Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17. Finnie baldly asserted the Morgan Stanley account offered a higher yield and had separate check writing capabilities to pay the decedent's monthly expenses. *See* N.T., 9/7/23, at 92; Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 16-17.[9] Finnie also highlighted that Zuber

_____

[8] While it would have been preferrable for the orphans' court to have summarized its findings of fact and credibility in greater detail, we note that Finnie, in her proposed findings of fact and conclusions of law, emphasized that Zuber had discussed the refund check with the decedent and suggested to the decedent that the check be deposited into the joint account. *See* Proposed Findings of Fact & Conclusions of Law, 11/13/23, at 6, 15. Although Finnie alternatively asserted that Zuber presented no evidence Zuber showed the decedent the refund check, or that the decedent was aware of its existence, the trial record contradicts that assertion. *Compare id*. at 15 *with* N.T., 9/14/21, at 159, 166; N.T., 9/7/23, at 49-50.

[9] Although Finnie asserts that depositing the refund check into the Morgan Stanley account would have obtained a higher return, the Morgan Stanley account was primarily an investment account with a cash account being funded by dividends from stocks and cash payments from other investments. The cash account, similar to the joint account, had a relatively negligible rate

*(Footnote Continued Next Page)*

could have increased the monthly transfer from Morgan Stanley to the joint account. *See* N.T., 9/7/23, at 94. Such evidence fell short of establishing that Zuber failed to act for the benefit of the decedent, let alone that Zuber deposited the refund check with the intent of benefiting herself rather than the decedent. Crucially, Finnie adduced no evidence that Zuber exercised any present, personal interest in the funds in the joint account before the decedent's death, intended to keep the remaining balance, or, as the orphans' court noted, acted in any way other than for the decedent's benefit. Thus, we discern no merit to Finnie's remaining arguments that she established Zuber's breach of a fiduciary duty.

In her second issue, Finnie contends the orphans' court erred in concluding that she failed to carry her burden on her claim for attorneys' fees related to the administration of the estate. Finnie claims that the sole issue before the orphans' court following the remand in *Finnie I* was whether Zuber could meet her burden of challenging the court's prior award of $11,289 for Attorney Adshead's fees for the administration of the estate.

Preliminarily, we note that Finnie waived this issue by failing to raise it at the trial court level, *see* Pa.R.A.P. 302(a), and by failing to identify the orphans' court's alleged error in her Rule 1925(b) statement. *See Chongqing Kangning Bioengineering Co., Ltd. V. Conrex Pharm. Corp.*, 327 A.3d

---

of interest, and Finnie offered no evidence that any investment strategy would have met the decedent's needs while offering the decedent the reassurance of having sufficient funds on hand to meet her expenses.

209, 214 (Pa. Super. 2024) (noting that an appellate court may *sua sponte* determine whether issues have been properly preserved on appeal).[10] However, even if not waived, we conclude Finnie's claim lacks merit.

The issue of whether a lower court properly interpreted the scope of a remand order is a question of law over which an appellate court's standard of review is *de novo* and the scope of review is plenary. **See In re Lokuta**, 11 A.3d 427, 438 (Pa. 2011). "A trial court has an obligation to comply scrupulously, meticulously, and completely with an order of [the appellate

_____

[10] At the second trial, Finnie's counsel acknowledged she would present evidence regarding attorneys' fees, and attempted to do so through direct examination of Finnie and without asserting that her entitlement to attorneys' fees had been previously decided in **Finnie I**. **See** N.T., 9/1/23, at 7, 97-127.

Moreover, Finnie's Rule 1925(b) statement asserted, in relevant part:

> 6. Whether the Orphans' Court erred or abused its discretion (and against the weight of the evidence) in refusing to admit into evidence or open the record to admit the itemized legal fees from the Law Office of Robert Adshead, which should be reimbursed to Denise Finnie because they related to the Estate of Eugenia M. Finnie, despite the authenticating testimonies of at least two witnesses with personal knowledge of the events transacted?

> 7. Whether the Orphans' Court erred or abused its discretion (and against the weight of the evidence) when it determined that, following the remand hearing, Denise Finnie failed to bolster the record in regards to the estate administration legal fees that she incurred, paid for, and sought reimbursement for?

Finnie's Rule 1925(b) Statement, 1/24/24, at ¶¶ 6-7. Given the presentation of the issue of attorneys' fees at the second trial and the relatively vague assertion that the orphans' court erred or abused its discretion in concluding that Finnie failed to bolster her claim for attorneys' fees, we cannot fairly read Finnie's Rule 1925(b) statement as including a claim that the orphans' court exceeded the scope of the remand ordered in **Finnie I**.

court] remanding a case to the trial court. . . . Issues not included in the mandate cannot be considered by the trial court." ***Carmen Enterprises, Inc. v. Murpenter, LLC***, 185 A.3d 380, 389 (Pa. Super. 2018) (internal citations, quotation marks, and brackets omitted).

Finnie argues that Zuber waived her challenge to the sufficiency of the evidence supporting the prior award of $11,289 for Finnie's attorneys' fees after the first trial. ***See*** Finnie's Brief at 34. Finnie further asserts that ***Finnie I*** "did not vacate the lower court's granting of the post-hearing motion or admission of [Attorney Adshead's bills] into evidence." ***Id***. at 34. Finnie asserts ***Finnie I*** remanded the issue of attorneys' fees only to allow Zuber to "put on evidence" to rebut the award, not for the orphans' court to reassess whether Finnie adduced sufficient evidence to support the award. ***Id***. at 36. Finnie thus concludes the orphans' court erred when it placed a burden on Finnie to prove her entitlement to attorneys' fees at the second trial. ***See id***.

The orphans' court, understandably, did not address this issue, but explained its reasons for denying Finnie's claim for attorneys' fees as follows:

> The record before the [c]ourt as to the attorneys' fees incurred by [Finnie] is extremely limited. Had [Finnie] established both that she incurred fees in her capacity as a co-executrix, and the amount of fees paid, those fees, to the extent reasonable, would be payable from the estate. However, despite an opportunity upon remand to bolster the record regarding such fees[, Finnie's] evidence fell woefully short yet again, as she opted against calling her prior counsel, [Attorney] Adshead, as a witness to authenticate the legal bills and provide the requisite evidence that the fees incurred related to administration of the estate. [Finnie] failed to authenticate documentary evidence . . . of alleged fees. ***See*** Pa.R.E. 901(a).

- 20 -

Orphans' Ct. Op., 3/13/24, at 9-10.

Having reviewed the record and our decision in **Finnie I**, we discern no merit to Finnie's arguments that Zuber waived any claims regarding Attorney Adshead's fees or that the orphans' court exceeded the proper scope of remand. To reiterate, at the first trial (discussed in **Finnie I)**, Finnie offered no documentary evidence about Attorney Adshead's fees related to the administration of the estate, but instead attached to her post-hearing memorandum alleged copies of bills from her attorney, which the orphans' court determined was sufficient to impose $11,289 in attorneys' fees despite the lack of evidence at trial. Additionally, the orphans' court denied Zuber's motion for reconsideration challenging the court's decision to apparently reopen the record and consider Finnie's documents. In **Finnie I**, the panel then noted Zuber's intended challenge to the orphans' court's decision to reopen the record to allow Finnie to establish the amount of reasonable expenses. **See Finnie I**, 2023 WL 2234376 (mem. decision at *10 n.6). **Finnie I**, however, found that issue "moot" in light of its remand for a new trial, and we vacated the entire order without affirming any part of the orphans' court's decision. **Id**. We added that Zuber would have a full and fair opportunity to challenge the "nature and amount of the attorney bills" at the new trial. **Id**.

Contrary to Finnie's arguments, we discern no basis to conclude that Zuber waived a challenge to the manner in which the orphans' court decided the issue of attorneys' fees following the first trial. Moreover, nothing in

- 21 -

*Finnie I* expressly or implicitly affirmed the trial court's decision to reopen the record of the first trial to consider evidence concerning the nature and amount of Attorney Adshead's bills. Similarly, there is no indication *Finnie I* concluded Finnie had presented sufficient evidence to sustain an award of $11,289. Thus, we conclude that the orphans' court, at the second trial, properly concluded that *Finnie I*'s order for a new trial had "wiped the slate clean" and required Finnie to present competent evidence to support her claim for attorneys' fees. *See generally Banohashim v. R.S. Enterprises, LLC*, 77 A.3d 14, 27 (Pa. Super. 2013) (noting that a new trial wipes the slate clean of the former trial with the right to have new rulings on evidence which arise in the course of a trial). Moreover, *Finnie I* expressly afforded Zuber a full and fair opportunity at the second trial to challenge Attorney Adshead's bill, and she did so by interposing an objection to authentication, which the orphans' court sustained. *See* Orphans' Ct. Op., 3/13/24, at 9-10. Accordingly, Finnie's arguments concerning the orphans' court's decision not to allow Finnie's claim for attorneys' fees against the estate warrant no appellate relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/25/2025